**Martin John KERSTEN, Respondent,**

v.

**The MINNESOTA MUTUAL LIFE INSURANCE COMPANY,**
**Appellant.**

**No. C6–98–2080.**

Supreme Court of Minnesota.

April 13, 2000.

Steven G. Mahon, Ryan, Mahon & Brown, P.A., St. Paul, for appellant.

Robert E. Wilson, Matthew C. Bazzano, Robert Wilson & Assoc., Minneapolis, for respondent.

## OPINION

PAUL H. ANDERSON, Justice.

Minnesota Mutual Life Insurance Company issued a disability insurance policy to Martin John Kersten using a definition of sickness that limited coverage of pre-existing conditions to those illnesses that first manifested themselves while the policy was in force. Minnesota Mutual then used this definition to discontinue paying Kersten disability benefits under the policy. Therefore, when Minnesota Mutual discontinued paying benefits under this policy, Kersten brought an action in Hennepin County District Court alleging that Minnesota Mutual breached its policy, asserting that Minn.Stat. § 62A.04, subd. 2(2)(b) (1998) precludes the use of Minnesota Mutual's definition.

Minnesota Mutual moved for summary judgment. The district court granted the motion, finding that the policy provision defining sickness properly excluded Kersten's current illness as having manifested itself prior to the effective date of the policy. The Minnesota Court of Appeals reversed and remanded, holding that Minnesota Mutual could not limit coverage to those disabilities that "first manifest" themselves after the policy is in force. The sole question presented to us on appeal is whether the statutorily required pre-existing condition provisions of Minn. Stat. § 62A.04, subd. 2(2)(b) (1998) preclude Minnesota Mutual from using this definition. We affirm the court of appeals.

On October 18, 1985, appellant Minnesota Mutual Life Insurance Company issued a disability insurance policy to respondent Martin John Kersten. The policy provided that if Kersten became disabled as defined in the policy as the result of an injury or sickness, he would be entitled to a monthly income benefit of $1,600 during his period of disability. The policy defined "sickness" as

> A disease or illness which first manifests itself while this policy is in force. A disease or illness first manifests itself when symptoms exist that would cause an ordinarily prudent person to seek diagnosis, care or treatment, or when a physician recommends or provides medical advice or treatment.

It is undisputed that from October 1985 until September 1993, Kersten made all premium payments and made no claim for benefits.

In September 1993, Kersten was involved in a motor vehicle accident. Following the accident, he was unable to work due to injuries received in the accident. Kersten submitted a claim for disability benefits under his Minnesota Mutual policy and Minnesota Mutual began to pay disability benefits to him effective from September 1993.

While receiving disability benefits, Kersten also received no-fault insurance benefits from his automobile insurance carrier. In July 1994, after an independent medical examiner rendered an opinion that Kersten was no longer disabled from the injuries he received in the motor vehicle accident, Kersten's automobile insurance carrier discontinued no-fault benefits. On May 22, 1995, an arbitrator denied Kersten's claim for additional no-fault benefits. Following this decision, Kersten sought benefits under the uninsured motorist provisions of his automobile insurance policy. In November 1996, an arbitration panel concluded that Kersten was not entitled to benefits beyond the no-fault benefits already paid.

Meanwhile, after the arbitrator denied Kersten's no-fault claims, Minnesota Mutual discontinued disability benefits on September 22, 1995, claiming that Kersten's physical injuries no longer prevented him from returning to work. Kersten disputes the discontinuation of his disability benefits, asserting that his continuing disability was only partially due to the motor vehicle accident. He asserts that following the accident, he was unable to return to work and his employer replaced him. He maintains that the loss of his job and his continuing pain resulted in psychological disorders including probable somatofon pain disorder and major depression that prevent him from returning to work. Minnesota Mutual argues that any psychological illness Kersten may have is a pre-existing condition because Kersten was treated for depression and anxiety in 1974, over 10 years before his Minnesota Mutual policy was in effect.

In July 1997, Kersten brought a breach of contract action against Minnesota Mutual in district court claiming that because he remained disabled, Minnesota Mutual was obligated by its policy to continue disability benefits. Minnesota Mutual moved for summary judgment, claiming that Kersten was collaterally estopped from relitigating his disability because the findings of the no-fault arbitrator were conclusive and Kersten never appealed this decision. Minnesota Mutual also argued that Kersten could bring no new claims because the policy lapsed for nonpayment after his disability benefits were discontinued. Kersten responded, arguing that his continued disability resulted not only from the motor vehicle accident, but also from his psychological illness, which the no-fault arbitration decision did not address. Minnesota Mutual then argued that because Kersten's psychological illness first manifested itself before the policy was in force, any claim based on a psychological illness was not covered by the policy. The court granted summary judgment for Minnesota Mutual, concluding that Kersten's claims for injuries from the motor vehicle accident were collaterally estopped and that Minnesota Mutual's policy language defining sickness properly excluded Kersten's claims for his psychological illness. The court also found that because Kersten was no longer disabled under the terms of the policy, his failure to make premium payments after benefits were discontinued caused the policy to lapse.

Kersten appealed, arguing that the district court erred because there were material issues of fact about whether his disability continued due to his psychological illness. Kersten also claimed that Minnesota Mutual's "first manifest" definition of sickness violated the coverage requirements of Minn.Stat. § 62A.04, subd. 2 and therefore could not constitute a basis to deny his disability benefits. The court of appeals agreed with Kersten, holding that there were material issues of fact relating to whether Kersten suffered a continuing disability and that these claims were not conclusively determined during arbitration. *See Kersten v. Minnesota Mut. Life Ins. Co.*, 594 N.W.2d 263, 267 (Minn.App.1999). The court also held that Minnesota Mutual's definition of sickness was inconsistent with the plain language of the pre-existing condition coverage requirements of Minn. Stat. § 62A.04, subd. 2. *See id.* at 266. Accordingly, the court reversed the district court's grant of summary judgment. *See id.* at 267. Minnesota Mutual appealed and we granted review on the sole question of whether Minnesota Mutual's definition of sickness is inconsistent with the plain language of Minn.Stat. § 62A.04, subd. 2.

■ This is a matter of first impression in Minnesota and involves the interpretation of both the requirements of a statute and the contractual provisions of an insurance policy. Both statutory and contractual interpretation present questions of law that we review de novo. *See Housing & Redevelopment Auth. ex rel. City of Richfield v. Adelmann*, 590 N.W.2d 327, 330 (Minn.1999); *Metropolitan Prop-*

*erty & Cas. Ins. Co. & Affiliates v. Miller,* 589 N.W.2d 297, 299 (Minn.1999). General contract principles govern the construction of insurance policies and insurance policies are interpreted to give effect to the intent of the parties. *See Dairyland Ins. Co. v. Implement Dealers Ins. Co.,* 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972). Because most insurance policies are presented as preprinted forms, which a potential insured must usually accept or reject as a whole, ambiguities in a policy are generally resolved in favor of the insured. *See Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 277 (Minn.1985).

It is undisputed that Minnesota Mutual's disability policy is subject to Minnesota Statutes Chapter 62A, which regulates various health and disability policies. *See generally* Minn.Stat. §§ 62A.011–62A.651 (1998). Section 62A.04 requires that certain provisions be included in any health or disability policy issued in this state. *See* Minn.Stat. § 62A.04. The provisions central to our analysis are found in the incontestability clauses of section 62A.04, subd. 2(2)(a) and (b), as well as section 62A.05, which provides guidance on the construction of chapter 62A.

■■■ A statutorily required provision in an insurance policy will not necessarily be construed against the insurer. *See Laidlaw v. Commercial Ins. Co. of Newark,* 255 N.W.2d 807, 811 (Minn.1977). Incontestability clauses, being in derogation of common law, are generally strictly construed. *See* 18 George J. Couch, *Couch on Insurance* § 72.9, at 289 (Ronald A. Anderson ed., 2d ed.1983); *see also Chuz v. Columbian Nat'l Life Ins. Co.,* 10 N.J. Misc. 1145, 162 A. 395, 395 (N.J.Cir.Ct. 1932). Further, we agree with those commentators who have noted that while incontestability clauses should be strictly construed, they also

> should be given a common-sense construction, bearing in mind the nature and purpose of the contract, that is, the meaning which would be understood by

a reasonably prudent person, not what the insurer intended or what meaning would be given by a language expert.

18 *Couch, supra* § 72.9, at 289 (citation omitted). This view is consistent with the previously stated principle that ambiguities in insurance contracts be generally construed in favor of the insured. *See Atwater Creamery Co.,* 366 N.W.2d at 277.

■■■ In the context of this general background, we begin our analysis with a discussion of the workings of section 62A.04, subd. 2(2), which contains two distinct clauses. A clear understanding of the distinct difference between these two clauses will be essential to our analysis. Clause (a) of this subdivision provides that after a policy has been in force for 2 years, and with an exception for fraud, an insurer may not avoid its obligations under a policy for inaccuracies and errors in statements contained in the policy application. *See* Minn.Stat. § 62A.04, subd. 2(2)(a) (1998). This clause further requires that the provisions mandated by this clause be captioned "INCONTESTABLE." *Id.* Clause (b) of this subdivision provides that, after a policy has been in force for 2 years, claims may not be reduced or denied on the basis that a disease or physical condition existed before the policy was in force, unless such disease or physical condition has been excluded by name or specific description. *See* Minn.Stat. § 62A.04, subd. 2(2)(b).

Subdivision 2(2) also permits an insurer to substitute its own equivalent provisions for the required provisions, provided that the insurer obtains the approval of the Commissioner of Commerce and that the substituted provisions "are in each instance not less favorable in any respect to the insured or the beneficiary." Minn. Stat. § 62A.04, subd. 2. Minnesota Mutual argues that the commissioner approved its policy and that we should therefore hold that the policy complies with the requirements of the statute. While not directly

relevant to our analysis, this argument warrants some preliminary comment.

■ We first note that it was not conclusively resolved below whether the commissioner approved Minnesota Mutual's definition of sickness. While the district court noted that the commissioner had approved the policy, it made no detailed finding. The court of appeals discussed but did not resolve the question. The court of appeals observed that the commissioner expressed some concerns over the language and that the commissioner had no record of the approval. On appeal to our court and for the first time, Minnesota Mutual submitted a letter indicating some type of approval by the commissioner. Kersten has properly objected to this evidence as being submitted for the first time on appeal.

■ In addition to being improperly before us, the letter submitted by Minnesota Mutual has minimal relevance to the issue before us on appeal. First, the letter does not indicate that the commissioner considered or reached a conclusion on the specific question before us. Minnesota Statutes § 62A.02, subd. 3(2) requires that the commissioner disapprove any policy that does not conform to Chapter 62A. *See* Minn. Stat. § 62A.02, subd. 3(2) (1998) ("[T]he commissioner shall, within 60 days after the filing of any form or rate, disapprove the form or rate: * * * (2) if it contains a provision or provisions which * * * [do] not comply with this chapter"). Second, while the commissioner's opinions on matters of insurance may be helpful when interpreting insurance regulation, we are not bound by those interpretations. *See Estate of Atkinson v. Minnesota Dep't of Human Servs.*, 564 N.W.2d 209, 213 (Minn.1997). Third, the commissioner has offered no specific opinion on the question before us today. Finally, this case deals primarily with the interpretation of a statute, a duty we cannot shift to the commissioner. For all of the aforementioned reasons, Minnesota Mutual's argument on this point is neither properly before us nor

relevant to our analysis and we will not consider it, despite the dissent's contention.

As previously noted, section 62A.04, subd. 2 permits an insurer to substitute its own language for the statutorily required language only if it does not make the policy any less favorable to the insured. Section 62A.05, subd. 1 contains a similar rule, which is also crucial to our analysis. This section gives guidance on the construction of Chapter 62A by providing that "[n]o policy provision which is not subject to section 62A.04 shall make a policy, or any portion thereof, *less favorable in any respect to the insured or the beneficiary*" than do the requirements of sections 62A.01 to 62A.09. Minn.Stat. § 62A.05, subd. 1 (1998) (emphasis added). Section 62A.05 further provides that a policy is not void for failure to comply with requirements of sections 62A.01 to 62A.09, but remains in force; and the rights, duties, and obligations of the parties will be construed consistent with sections 62A.01 to 62A.09. *See* Minn.Stat. § 62A.05, subd. 2.

Minnesota Mutual's disability policy contains a provision similar to section 62A.05, subd. 2. It states that if any of the policy's provisions conflict with any law in the state where the insured resides, the policy "is hereby amended to conform to the minimum requirements of those statutes." Because section 62A.05 requires that no other provision in the policy make any of the required provisions less favorable to the insured, we must determine whether Minnesota Mutual's "first manifest" definition of sickness makes any coverage required by clause (b) of section 62A.04 less favorable to the insured. Therefore, we must now determine what coverage, if any, is required by clause (b).

■ The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1998); *see also Boutin v. La-Fleur*, 591 N.W.2d 711, 715 (Minn.1999). When the language of the statute is plain

and unambiguous, it manifests the legislative intent and we must give the statute its plain meaning. *See In re Welfare of J.M.,* 574 N.W.2d 717, 721 (Minn.1998). When a statute is ambiguous, the legislative intent may then be determined by examining other factors including the need for the law, the circumstances of its enactment, the purpose of the statute, and the consequences of a certain interpretation. *See* Minn.Stat. § 645.16.

We conclude that the plain language of clause (b) indicates a legislative intent that, 2 years after a policy is in force, pre-existing conditions be covered by the policy, subject to specific exclusion by the insurer. Clause (b) states:

> No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

Minn.Stat. § 62A.04, subd. 2(2)(b). In essence, clause (b) requires coverage for pre-existing diseases or physical conditions while granting the insurer the ability to exclude, by name or specific description, any pre-existing condition.

Clause (b) operates in conjunction with clause (a) of section 62A.04, subd. 2(2). An insured's disclosures on a policy application should reveal any pre-existing conditions to the insurer. If the insurer does not wish to cover a particular pre-existing condition, it may then exclude that condition from the policy by name or specific description. If the insured intentionally withholds information about a known pre-existing condition, then clause (a)'s fraud exception permits the insurer to void the

policy. *See* Minn.Stat. § 62A.04, subd. 2(2)(a). This is consistent with general insurance law in Minnesota, which has permitted insurers to void policies for misstatements in the application if such misstatements are made "with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss." Minn.Stat. § 60A.08, subd. 9 (1998). Clause (b) also provides the insurer a 2–year "safe-harbor." If the insured is disabled, as defined in the policy, by a pre-existing condition within the first 2 years the policy is in force, this section does not preclude the insurer from denying coverage. *See* Minn.Stat. § 62A.04, subd. 2(2)(b).

Minnesota Mutual and the dissent assert that because the language of clause (b) permits the insurer to define disability in the context of the policy, Minnesota Mutual's "first manifest" definition of sickness is not expressly prohibited by the statute. They also assert that incontestability clauses such as the one at issue here only affect a policy's validity and not its coverage. Quoting a Fifth Circuit decision, they argue that an "incontestable clause in a disability policy does not deprive the insurer from defending on the ground that the particular disability was never within the policy coverage." *Massachusetts Cas. Ins. Co. v. Forman,* 516 F.2d 425, 428 (5th Cir.1975). Minnesota Mutual and the dissent then conclude that because Minnesota Mutual has defined "sickness" as those illnesses that first manifest themselves while the policy is in force, those illnesses that manifested themselves before are not "sicknesses" as defined in the policy and therefore were never within the policy coverage.[1]

---

1. The dissent correctly observes that the statute analyzed by the Fifth Circuit in *Forman* contained a clause similar to clause (b) of Minn.Stat. § 62A.04, subd. 2(2). But the Fifth Circuit court's analysis in *Forman* was conducted primarily under a provision similar to clause (a) of section 62A.04, subd. 2(2), which clause contained no exception for fraud by the insured. The court's discussion focused on the language of clause (a) and the court only discussed clause (b) briefly to state that the clause did not have any impact on the court's analysis. *See Forman,* 516 F.2d at 429–30.

Minnesota Mutual's and the dissent's reliance on *Forman* is misplaced. The *Forman* court, Minnesota Mutual, and the dissent all rely on *Metropolitan Life Ins. Co. v. Conway*, 252 N.Y. 449, 169 N.E. 642 (1930), to assert that an incontestability clause does not expand a policy's coverage; rather, it only limits the defenses available to the insurer. While this legal proposition may have been true in New York in 1930, it does not apply here. In *Conway*, Judge Benjamin Cardozo analyzed a clause with language similar to that contained in clause (a) of section 62A.04, but did not address a requirement akin to the pre-existing conditions coverage requirement contained in clause (b). *See Conway*, 169 N.E. at 642. As previously noted, clause (a) and clause (b) contain distinctly different policy provisions: clause (a) deals with incontestability of the application, while clause (b) deals with pre-existing conditions coverage. The majority of the decisions cited by Minnesota Mutual to support its interpretation have been decided primarily under statutory or policy provisions similar to those in clause (a) and not under policy provisions similar to those in clause (b). *See, e.g., Forman*, 516 F.2d at 428; *Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 644 A.2d 1098, 1104 (1994).

Additionally, the assertion that the language of clause (b) affects a policy's validity but does not relate to coverage is contrary to a plain reading of the clause. As noted earlier, clause (b) requires that "no claim for loss incurred or disability (as defined in the policy) * * * shall be reduced or denied on the ground that a disease or physical condition * * * had existed prior to the effective date of coverage of this policy." Minn.Stat. § 62A.04, subd. 2(2)(b). It is clear from this language that the legislature intended to require coverage for a "disease or physical condition" that existed prior to the policy's effective date unless, at a minimum, the insurer has specifically excluded that condition prior to the loss.

Having determined that clause (b) involves coverage, we next must determine whether Minnesota Mutual's "first manifest" definition of illness makes Kersten's policy "less favorable in any respect to the insured." Minn.Stat. § 62A.05. In making this determination, we agree with those courts which have analyzed this question under statutes containing language virtually identical to clause (b) and which have noted that the purpose of requiring a "preexisting conditions clause" is to avoid the very situation presented here. *See, e.g., Equitable Life Assurance Soc'y of the U.S. v. Bell*, 27 F.3d 1274, 1278–79 (7th Cir. 1994). The clause seeks to avoid an insurer challenging a long-existing disease or physical condition, not expressly excluded from the policy, as not being within the scope of coverage years after a policy has been in effect. *See id.* at 1278. The Seventh Circuit, when analyzing an almost identical clause, stated:

> These clauses are now required by statute in most states because without them, insurers were apt to deny benefits on the grounds of a pre-existing condition years after a policy had been issued. This left beneficiaries * * * in the untenable position of having to do battle with powerful insurance carriers. The incontestability clause is thus in the nature of a statute of limitation and repose, obliging the insurer to investigate the insured's medical history promptly else it become bound by the representations contained on the insured's application.

*Id.* (quotations and citations omitted).

We conclude that clause (b) of section 62A.04, subd. 2(2), expresses a clear process to effect the purpose articulated by the Seventh Circuit in *Bell*. Two years after a policy is in force, an insurer may not deny or reduce coverage for a preexisting "disease or physical condition" unless the insurer specifically excludes that condition "by name or specific description." Minn.Stat. § 62A.04, subd. 2(2)(b); *see also Wischmeyer v. Paul Revere Life*

*Ins. Co.*, 725 F.Supp. 995, 1004–05 (S.D.Ind.1989) (interpreting an Indiana statute nearly identical to Minn.Stat. § 62A.04, subd. 2(2)(b)).[2]

Minnesota Mutual urges us to accept its position that a "first manifest" definition of sickness resolves uncertainty in coverage with respect to pre-existing conditions by providing a clear rule applicable in all cases regardless of the disclosures made in a policy application. *See Forman*, 516 F.2d at 429–30. However, accepting this approach would allow an insurer to define away all coverage for "diseases and physical conditions" that occurred in any way prior to the effective date of the policy. On this point we agree with the *Wischmeyer* court that such a result is clearly contrary to legislative intent. In *Wischmeyer*, the court observed that to permit an insurer to generally exclude pre-existing conditions by a "first-manifest" definition of illness, in the face of a statute requiring them to do so specifically by "name or specific description," would be to render the statutory provision "absurd." 725 F.Supp. at 1005. The *Wischmeyer* court noted that then "all insurers would instantly place such a statement in their form policies, and thereafter no insurer would be precluded from denying claims based on pre-existing conditions." *Id.*

We acknowledge that a "first manifest" definition does not necessarily eliminate coverage for all pre-existing conditions. But section 62A.05 prohibits any other provision in a policy not covered by section 62A.04 from making coverage "less favorable in any respect" to the insured. *See* Minn.Stat. § 62A.05. Minnesota Mutual's "first manifest" definition of illness attempts to exclude from coverage those pre-existing conditions that manifested themselves prior to the effective coverage date. This would significantly reduce the number of pre-existing conditions that the policy covers. As such, Minnesota Mutual's "first manifest" definition is in direct conflict with the provisions of section 62A.05.

It is relatively certain that an insurer would prefer not to specifically "by name or specific description" refuse coverage to a potential insured for a "disease or physical condition" for which the insured has a reasonable concern may cause a future disability. A specific refusal to cover the "disease or physical condition" may dissuade a potential insured from purchasing a policy. However, the legislature has required that in order to exclude a pre-existing condition from coverage, the insurer must do so by "name or specific description." This makes certain that the insured knows exactly what coverage he is purchasing and the insurer knows exactly for what it will and will not be asked to provide disability benefits. In fairness to the insurer, the legislature removed from clause (a) any incentive for the insured to conceal a known pre-existing "disease or physical condition" by permitting the insurer to void the policy on the grounds of fraud at any time. *See* Minn.Stat. § 62A.04, subd. 2(2)(a). Full disclosure by both parties is encouraged and protected by this scheme, and hence the freedom of

---

**2.** The dissent suggests that our holding forces an insurer to assume liability for losses that occurred before the policy is in force. This misconstrues our holding and misunderstands the nature of a loss under a disability policy. A loss only occurs under a disability policy once the insured is disabled, not when the disease or physical condition exists or even when it manifests itself. Minnesota Mutual's policy defines disability as

    a disease or injury which:

        (1) requires the reasonable and customary care of a physician; and

        (2) results in your inability to perform substantial and material duties of your regular occupation * * *.

This event, *disability*, is the loss that must occur after the policy is in force. After the policy is in force for 2 years, section 62A.04, subd. 2(2)(b) prohibits an insurer from denying or reducing coverage, after the loss, on the basis of a pre-existing condition that the policy did not exclude by name or specific description.

both parties to enter the contract for which they bargained is assured.

Finally, Minnesota Mutual claims that its "first manifest" definition of sickness addresses the same issues of certainty of coverage as does subdivision 2(2), but we conclude that it does so in a manner that makes the required coverage "less favorable" to the insured. Clause (b) is clearly intended to apply to any "disease or physical condition" that "existed prior to the effective date" of the policy. Minnesota Mutual's "first manifest" definition of sickness attempts to limit its policy coverage to only those illnesses that first manifest themselves after the policy is in force. Thus, this "first manifest" definition of sickness makes the coverage required by clause (b) "less favorable" to the insured.

We hold that because Minnesota Mutual's "first manifest" definition of sickness makes the required coverage of clause (b) of Minn.Stat. § 62A.04, subd. 2(2) less favorable to the insured, it is not permitted under Minnesota law. Both Minn.Stat. § 62A.05 and Minnesota Mutual's policy require us to interpret Kersten's policy to comport to the requirements of Minn.Stat. § 62A.04. We hold that, after Kersten's disability insurance policy with Minnesota Mutual was in force for 2 years, clause (b) required coverage for any pre-existing "disease or physical condition" not excluded from coverage "by name or specific description" prior to the date of loss. Accordingly, we affirm the court of appeals and remand this matter to the district court for further proceedings consistent with our holdings and the holdings of the court of appeals.

Affirmed.

STRINGER, Justice (dissenting).

I respectfully dissent. The majority's holding violates fundamental principles of insurance law relating to indemnification of a defined risk and misconstrues the statutory provisions that it relies upon to conclude that coverage is compelled.

The operative facts are that respondent was treated for depression and anxiety in 1974. Minnesota Mutual issued a disability insurance policy to respondent on October 18, 1985. The policy, which was approved by the Commissioner of Commerce,[3] included coverage for "sickness," defined as "[a] disease or illness which *first manifests itself* while this policy is in force." (emphasis added). Respondent received disability benefits from Minnesota Mutual but the benefits were discontinued when Minnesota Mutual discovered that the cause of respondent's disability had not first manifested itself during the policy period but rather more than ten years prior to the policy's inception.

Respondent's claim that he should nonetheless be entitled to disability benefits is inconsistent with the clear language of his disability policy and basic principles of insurance law. "The primary requisite essential to a contract of insurance is the assumption of a risk of loss and the undertaking to indemnify the insured against such loss." 1 George J. Couch, *Couch on Insurance* § 1:3, at 6–7 (Ronald A. Anderson ed., 2d ed.1983). We have defined insurance as "any agreement whereby one party, for a consideration, undertakes to indemnify another to a specified amount against loss or damage from specified causes," *State v. Bean*, 193 Minn. 113, 114–15, 258 N.W. 18, 18 (1934), and have held that the date the policy goes into effect is determined by the terms of the policy. *See Oster v. Riley*, 276 Minn. 274, 277, 150 N.W.2d 43, 46 (1967). Moreover, "it is customary for policies to bear a certain date and to insure against losses arising *after* that date. * * * [T]he insured may not recover for losses occurring

---

3. The majority suggests that the Commissioner of Commerce may not have approved Minnesota Mutual's insurance policy. While there was no detailed finding made by the lower courts as to this point, Minnesota Mutu-

al's request for approval was stamped as received by the Department of Commerce on January 29, 1985, and stamped as approved on February 1, 1985.

prior to that date." 1 John Appleman & Jean Appleman, *Insurance Law and Practice* § 102, at 330 (1981) (emphasis added). Minnesota case law reflects this bedrock principle–insurance covers losses occurring during, not before, the period of coverage. *See, e.g., Kilborn v. Prudential Ins. Co.,* 99 Minn. 176, 179, 108 N.W. 861, 862 (1906).

The majority finds coverage for a loss resulting from a sickness that manifested itself years before the policy became effective based upon Minn.Stat. § 62A.04, subd. 2(2)(b), the incontestability provision required to be included in all accident and sickness insurance policies:

> No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

Minn.Stat. § 62A.04, subd. 2(2)(b). The majority creates coverage where none existed before by denying Minnesota Mutual's right to enforce the "first manifests itself" policy provision. But creating coverage is not the purpose of the incontestability provision as it is not intended to preclude the insurer from denying coverage based on preexisting conditions. As noted in *Couch on Insurance,* an incontestability clause "does not bar the insurer from showing that the condition or disability is not covered by the policy because it originated or had its inception prior to the attachment of the risk." 18 Couch, *supra,* § 72:61, at 329. Similarly, "[w]here loss is claimed by reason of disability covered by the policy, it is necessary * * * that the cause of such disability arise within the policy terms and after the insurance has been effected. * * * The incontestable clause does not apply * * * and there can be no recovery unless the cause of disability arose within the time designated." 1A Appleman & Appleman, *supra,* § 333, at 390. Importantly, the "Standard provi-

sions" statute, Minn.Stat. § 62A.04, subd. 2, permits insurers to use words different from the statutory language in defining the standard provisions, but the provision must not be "less favorable in any respect to the insured" and must be approved by the Commissioner of Commerce. Here Minnesota Mutual's policy requiring the disease or illness to "first manifest[ ] itself while this policy is in force" was approved by the Commissioner, and the conclusion is therefore compelling that the "first manifests itself" clause is not inconsistent with the mandatory incontestability provision.

The purpose of the incontestability provision, as noted in Appleman, is to give insurers an incentive to within a "reasonable period of time * * * check into and to ascertain the truth of the declarations made by the applicant and to take such action as will protect its rights. If it fails to do so, these defenses are barred." 1A Appleman & Appleman, *supra,* § 333, at 385–86. We also held long ago that an incontestability clause is intended to "render all statements by the insured in the application for the insurance *representations* and not *warranties* [,]" *Sellwood v. Equitable Life Ins. Co. of Iowa,* 230 Minn. 529, 536, 42 N.W.2d 346, 351 (1950) (emphasis added)–that is, to protect an insured from the harsh results of an inadvertent mistake in the policy application which might otherwise be grounds for recision. *See, e.g., Schaedler v. New York Life Ins. Co.,* 201 Minn. 327, 333, 276 N.W. 235, 239 (1937) (stating that an incontestability clause permits the insurer a defense for false statements made in a policy but "[n]o oral or written misrepresentation made by the assured * * * in the negotiation of insurance, shall * * * defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud"). In short, the incontestability provision prevents the insurer from denying the *validity* of a policy because of inadvertent misstatements made by the insured, but cannot *create* coverage for illnesses manifesting themselves prior to

the policy's inception when such illnesses have been explicitly excluded from coverage by the policy.

These principles are reflected in *Metropolitan Life Ins. Co. v. Conway,* where then Chief Judge Cardozo held:

> The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage * * *. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.

252 N.Y. 449, 169 N.E. 642, 642 (1930). More recently, in *Massachusetts Cas. Ins. Co. v. Forman,* 516 F.2d 425, 429 (5th Cir.1975), the Fifth Circuit held that an incontestability clause similar to the one here [4] did not extend coverage to a disability where the disability first manifested itself prior to the term of the policy.[5] The court reasoned that because the condition manifested itself almost a year before the policy became effective, "disability resulting from [the condition] was never within the scope of policy coverage," and the incontestability provisions of the policy could not breathe life into a claim that never existed. *Forman,* 516 F.2d at 428. The court then concluded that extending coverage beyond the date of the policy "is contrary to the general principle that incontestable clauses do not operate to extend coverage * * * ." *Id.* at 429. The purpose of an incontestability clause is thus to preclude insurers from denying the validity of a policy based upon a defect in the application, with the sole exception of fraud. It has not and should not be construed to expand coverage to risks clearly not intended to be insured by the policy.

Respondent's depression is a sickness that was never within the scope of policy coverage because it did not manifest itself during the policy period. Because there never was coverage for the sickness, the expiration of two years or five years or ten years is wholly irrelevant. Not only does basic insurance law–that insurable losses are those that occur during the policy period and the parties to an insurance contract can agree to exclude from coverage losses caused by preexisting sicknesses–compel this conclusion, it also appropriately puts the burden on the insured to disclose and bear the risk of non-coverage for sicknesses manifesting themselves prior to the policy period.[6]

Finally, the majority relies on Minn. Stat. § 62A.05, subd. 1, providing that a policy cannot provide "less favorable" coverage than the statute prescribes and argues that the "first manifests itself" provi-

---

**4.** Clause (b) of the incontestability clause stated "No claim * * * commencing after two years from the date of issue of this Policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this Policy." *Forman,* 516 F.2d at 428.

The majority asserts that the language in clause (b) had no impact on the *Forman* court's analysis. However, the *Forman* court takes care to discuss clause (b) at some length, noting for instance that "[t]his statutory clause only prohibits denials of claims *based on the prior existence of a disease* " and that reading the clause to extend coverage "would not promote the purpose or policy" of the statute. *Id.* at 429 (emphasis added).

**5.** *See also Neville v. American Republic Ins. Co.,* 912 F.2d 813 (5th Cir.1990) (holding that insured's deafness was not a "sickness" under the policy where it first manifested before the policy was in force, thus the incontestability clause did not require coverage for surgery more than two years after the policy was issued to cure insured's deafness).

**6.** The majority states that this represents a misunderstanding of the distinction between a "loss" and a "sickness" as defined by Minnesota Mutual's disability policy. A "loss" occurs under a disability policy when the injured is disabled, to be sure, and here the disability occurred while the policy was in force. But the loss was caused by a sickness manifesting itself years before the policy was in force and coverage for such a loss is explicitly excluded by the policy.

sion significantly reduces the number of preexisting conditions covered by the policy and thus violates the statute. Of course that is true, but the provision defines the risks the parties agreed to. Further, the Commissioner of Commerce specifically approved the "first manifests itself" language, as noted above.

I would reverse the ruling of the court of appeals because the incontestability provision does not have its roots in creating coverage where it never existed. Its purpose is instead to prevent the denial of the validity of a policy after the expiration of the requisite years of being in force.