**STATE of Minnesota, Respondent,**

v.

**Jay Joseph GROSSMAN, Appellant.**

**No. C8–00–459.**

Court of Appeals of Minnesota.

Feb. 6, 2001.

Review Granted April 17, 2001.

Mike Hatch, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Kathryn M. Keena, Assistant County Attorney, Hastings, MN, (for respondent).

Robert D. Sicoli, Sarah M. Aho, Thompson & Sicoli, Minneapolis, MN, (for appellant).

Considered and decided by AMUNDSON, Presiding Judge, SCHUMACHER, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge

Appellant challenges the sentence imposed for his conviction of first-degree criminal sexual conduct, arguing that the 40 year sentence based on Minn.Stat. § 609.108 (1998), Minnesota's patterned sex-offender statute, violates due process following *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Because we conclude that the factfinder must make findings, under a standard of proof beyond a reasonable doubt, of factors that could result in a sentence greater than the statutory maximum, we reverse and remand for resentencing.

## FACTS

On November 24, 1998, R.C. and some friends went out to a sequence of bars to celebrate a friend's birthday. R.C. recalled feeling intoxicated and, at some point, being asked by bouncers to leave. After waiting outside the bar for a period of time in anticipation of a ride home from one of her friends, R.C. accepted appellant's offer of a ride back to her car. Appellant, who was a stranger to R.C., first dropped off one of his friends. At that point, appellant and R.C. were alone in appellant's car. R.C. asked appellant to take her to a friend's home, believing she was too intoxicated to drive herself. They drove around for some time in an attempt

to locate R.C.'s friend's residence, finally pulling into a parking lot. The next thing R.C. remembered was opening her eyes to find herself being raped by appellant in a field.

R.C. screamed and attempted to resist. Appellant covered her mouth with his hand. R.C. testified that she bit, punched, and kicked appellant and, in response, was punched and hit numerous times on her face and torso. Appellant also placed both hands on R.C.'s neck and choked her so hard that she could not breathe. R.C. "played dead" until appellant left the scene. She then sought help at a nearby home.

Upon later physical examination, R.C. was diagnosed with a fractured rib, torn lingular frenulum (the tissue attaching the tongue to the bottom of the mouth), broken teeth, and extensive bruising over much of her face, neck, and body. Appellant was convicted of attempted murder in the second degree, assault in the first degree, assault in the third degree, and three counts of first-degree criminal sexual conduct. Prior to trial, appellant was ordered by the court to undergo psychological and psychosexual evaluation that was conducted by Peter D. Marston, Ph.D. The evaluation revealed that appellant had obsessions and fantasies about raping women. He also admitted to having raped two other females, both minors, prior to this offense. No charges were brought for the earlier incidents.

In his report, Dr. Marston concluded, among other things, that appellant is "a dangerous sexual predator * * * capable of unpredictable violence and sexual violence against women including young teenage women" and presents a "high likelihood for recidivism." Dr. Marston opined that appellant "should be considered for commitment as a sexually dangerous person or sexual psychopath prior to his release."

Dr. Marston also addressed the issue of whether appellant is a patterned sex offender within the meaning of Minn.Stat.

§ 609.108 in an addendum to his report. In both the addendum and his testimony at appellant's sentencing hearing, Dr. Marston opined that appellant is a predatory sex offender who meets the criteria for the patterned sex-offender statute. Dr. Marston concluded that appellant's "pattern of criminal sexual behavior is so ingrained that the risk of reoffending is great without long-term inpatient treatment." Appellant was sentenced by the court as a patterned sex offender and committed to the commissioner of corrections for 40 years. This appeal follows.

## ISSUE

Does Minn.Stat. § 609.108 (1998) violate due process by permitting a sentence beyond the prescribed statutory maximum based on factual findings not made by a jury and not proven beyond a reasonable doubt?

## ANALYSIS

Appellant argues that the patterned sex-offender statute is unconstitutional, as applied to him, because it increases the statutory maximum sentence based on factors found by the sentencing court and not submitted to the jury under the standard of proof beyond a reasonable doubt.

This court reviews the constitutionality of a statute under a de novo standard of review. *State v. Wicklund*, 589 N.W.2d 793, 797 (Minn.1999). In order to successfully challenge the constitutionality of a statute, appellant must prove beyond a reasonable doubt that the statute is unconstitutional. *State v. Christie*, 506 N.W.2d 293, 296 (Minn.1993).

Due process protects a defendant from criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The legislature has

the authority to define the crime so that the state need not prove to a jury beyond a reasonable doubt every fact affecting the severity of the sentence. *Patterson v. New York,* 432 U.S. 197, 207, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977). The legislature may even define certain facts that might otherwise be considered elements of the offense as sentencing factors to be determined by the court, as long as the statute does not alter the maximum penalty for the crime. *McMillan v. Pennsylvania,* 477 U.S. 79, 87–88, 106 S.Ct. 2411, 2416–17, 91 L.Ed.2d 67 (1986).

Appellant relies on a recent United States Supreme Court decision in which the Court held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Apprendi v. New Jersey,* 530 U.S. 466, 488-90, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000).

In *Apprendi,* the defendant was charged under a "hate crimes" statute that increased the maximum sentence if the court determined by a preponderance of the evidence that the crime was committed to intimidate based on race, color or ethnicity, among other attributes. *Id.* at 468, 120 S.Ct. at 2351. Under the statute, the maximum sentence was increased from 10 to 20 years. *Id.*

The Supreme Court declared New Jersey's "hate crimes" statute unconstitutional because the question of Apprendi's motive was not submitted to a jury for determination under the proof-beyond-a-reasonable-doubt standard. *Id.* at 490, 120 S.Ct. at 2363. Appellant was sentenced under Minnesota's patterned sex-offender statute, which requires the court to impose an upward durational departure of at least double the presumptive sentence, and up to the statutory maximum, when certain factors are present. Minn.Stat. § 609.108, subd. 1(a) (1998). When a court is sentencing under the

statute, and "the factfinder" determines that the crime was committed "in furtherance of sexual contact or penetration," the statutory maximum sentence is increased to 40 years. *Id.,* subd. 2 (1998).

Respondent argues that because subdivision 2 requires a finding by the "factfinder," i.e., the jury when the case is tried to a jury, the patterned sex-offender statute is not unconstitutional under *Apprendi.* But subdivision 2 does not stand alone in this sentencing enhancement scheme. It requires that the court be "imposing a sentence under subdivision 1" before the statutory maximum is increased. *Id.* Thus, we must look to subdivision 1 to determine whether the constitutional requirement announced in *Apprendi* is satisfied.

Minn.Stat. § 609.108, subd. 1(a), mandates an upward departure of at least double the presumptive sentence when the following three factors are present:

(1) the court is imposing an executed sentence, based on a sentencing guidelines presumptive imprisonment sentence or a dispositional departure * * * on a person convicted of committing or attempting to commit [first-, second-, third-, or fourth-degree criminal sexual conduct], or on a person convicted of committing [a predatory crime] if it reasonably appears to the court that the crime was motivated by the offender's sexual impulses or was part of a predatory pattern of behavior that had criminal sexual conduct as its goal;

(2) the court finds that the offender is a danger to public safety; and

(3) the court finds that the offender needs long-term treatment or supervision beyond the presumptive term of imprisonment and supervised release. The finding must be based on a professional assessment by an examiner experienced in evaluating sex offenders that

concludes that the offender is a patterned sex offender.

Minn.Stat. § 609.108, subd. 1(a).

All three prongs of subdivision 1(a) must be met before a defendant can be sentenced as a patterned sex offender. *See Christie*, 506 N.W.2d at 298 (discussing earlier version of patterned sex-offender statute that did not increase statutory maximum sentence); *State v. Danforth*, 573 N.W.2d 369, 377 (Minn.App.1997), *review denied* (Minn. Feb. 19, 1998). Thus, there are three factual issues posed by the statute to be determined by the sentencing court rather than the jury. If all three prongs are met, then the statutory maximum is increased under subdivision 2. Although the sentencing court is not *required* to sentence a patterned sex offender to this increased statutory maximum, the district court did so here. Appellant argues that the statute as applied here violated *Apprendi*.

It is at least arguable, although we need not decide it in this case, that the first factor in the patterned sex-offender statute merely incorporates the jury's verdict when the conviction is for criminal sexual conduct and, therefore, does not violate *Apprendi*. Subdivision 1(a)(1) is satisfied if the court is imposing an executed sentence on an offender convicted of first-, second-, third-, or fourth-degree criminal sexual conduct. The additional requirement that the offense be motivated by the offender's sexual impulses or form a part of a predatory pattern of behavior applies, in our view, only if the conviction is for a "predatory crime" other than criminal sexual conduct. *See Danforth*, 573 N.W.2d at 376 (using ellipsis to indicate conviction for criminal sexual conduct by itself satisfies subdivision 1(a)(1)). But, as this is only one of the three factors that must be met, the *Apprendi* analysis cannot stop with this factor.

■ The second factor provided in the patterned sex-offender statute is a finding by the court that "the offender is a danger to public safety." Minn.Stat. § 609.108,

subd. 1(a)(2). This is a factual finding, although one of a predictive nature, that is made by the sentencing court rather than by the jury. Under *Apprendi*, "any fact" that increases the statutory maximum sentence must be submitted to the jury. 530 U.S. at 488-90, 120 S.Ct. at 2362–63. The finding that the offender is a "danger to public safety" is a fact that is necessary, although not sufficient, to increase the statutory maximum sentence.

Whether the defendant is a "danger to public safety" is a predictive judgment that is often left to the sentencing court rather than the jury. But in capital cases, many states allow the jury to assess future dangerousness in deciding whether to impose the death penalty. *See Simmons v. South Carolina*, 512 U.S. 154, 163, 114 S.Ct. 2187, 2193, 129 L.Ed.2d 133 (1994). Moreover, *Apprendi* does not distinguish facts that have traditionally been considered sentencing factors from those that have traditionally been presented to the jury as elements of the offense.

The Supreme Court in *Apprendi* noted that the issue of motivation that under the "hate crimes" statute was submitted to the court rather than the jury was very close to the traditional common law element of mens rea. *Apprendi*, 530 U.S. at 493, 120 S.Ct. at 2364. But the Court went on to conclude that the distinction between traditional "elements" and "sentencing factors" was irrelevant:

> Despite what appears to us the clear "elemental" nature of the factor here [mens rea], the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?

*Id.* at 493, 120 S.Ct. at 2365.

Thus, the *Apprendi* Court did not defer to any traditional practice in sentencing, except for the "sentencing factor" of recidivism that the Court had previously recognized in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140

L.Ed.2d 350 (1998). *Apprendi,* 530 U.S. at 487, 120 S.Ct. at 2361 (describing *Almendarez–Torres* as, at best, an "exceptional departure" from historic practice that the court could impose only sentence within the range defined by the jury's verdict). *Apprendi* even suggests that *Almendarez–Torres* was wrongly decided. *Id.* at 487, 120 S.Ct. at 2362. Thus, *Apprendi* cannot be distinguished on the grounds that future dangerousness, like recidivism, may be a factor that has traditionally been left to the sentencing court rather than the jury. *Cf. State v. Stewart,* 486 N.W.2d 444, 447 (Minn.App.1992) (holding that prior criminal record of person accused of "heinous crime" must be determined by the grand jury because it increases punishment to life imprisonment).

The third factor provided in the statute is the finding, based on a professional assessment, that the offender is a "patterned sex offender." Minn.Stat. § 609.108, subd. 1(a)(3). This factor, again, is found by the sentencing court rather than by the jury. *Id.* As with the second factor, it is a fact necessary, although not sufficient, to increase the statutory maximum sentence.

Whether a defendant is a "patterned sex offender," like future dangerousness, is not a fact that in Minnesota has traditionally been presented for determination by a jury. But *Apprendi* questions the historical basis for distinguishing "elements" of the offense from "sentencing factors." *Apprendi,* 530 U.S. at 494, 120 S.Ct. at 2365. Moreover, under *Apprendi,* "the relevant inquiry is one not of form, but of effect * * * ." *Id.* at 494, 120 S.Ct. at 2365. The *effect* of a determination that a defendant is a "patterned sex offender," as well as a "danger to public safety," is to increase the maximum sentence to which he may be sentenced. Under *Apprendi,* those determinations must be made by the jury based on proof beyond a reasonable doubt.

This analysis of the patterned sex-offender statute establishes that, unless *Apprendi* can be distinguished or limited to single-factor sentence enhancement schemes, the statute does not satisfy the requirements of due process. Respondent cites no authority, and we have found none, that would prevent *Apprendi* from being applied to multi-factor sentence enhancement statutes like Minn.Stat. § 609.108, subd. 1. We conclude that, although *Apprendi* involved the offender's mental state, a sentencing factor much more closely related to the traditional elements of an offense, its holding cannot be distinguished in this case. The patterned sex-offender statute, as applied here to increase appellant's maximum sentence, violates due process under *Apprendi.* Appellant's sentence must be remanded for imposition of the statutory maximum sentence of 30 years under Minn.Stat. § 609.342, subd. 2 (1998).

### DECISION

The patterned sex-offender statute, Minn.Stat. § 609.108, subd. 1 (1998), violates due process in increasing the statutory maximum sentence for offenders sentenced under it based on findings made by the sentencing court rather than the jury.

**Reversed and remanded.**