STATE of Minnesota, Petitioner,
Appellant,

v.

Jay Joseph GROSSMAN, Respondent.

No. C8–00–459.

Supreme Court of Minnesota.

Dec. 13, 2001.

Mike Hatch, Atty. Gen., St Paul, James C. Backstrom, Dakota County Atty., Kathryn M. Keena, Asst. Dakota County Atty., Hastings, for appellant.

Robert D. Sicoli, Sarah M. Aho, Thompson, Sicoli & Aho, Ltd., Minneapolis, for respondent.

## OPINION

LANCASTER, Justice.

This case involves application of the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to Minnesota's patterned sex offender sentence enhancement statute, Minn.Stat. § 609.108 (2000).

Jay Grossman was convicted of, inter alia, first-degree criminal sexual conduct (fear of imminent great bodily harm) in violation of Minn.Stat. § 609.342, subd. 1(c) (1998), an offense that carries a maximum sentence of 30 years' imprisonment. Minn.Stat. § 609.342, subd. 2 (1998). The sentencing court enhanced Grossman's sentence pursuant to Minn.Stat. § 609.108, subd. 2 (2000), imposing a 40-year sentence after making a series of findings by a preponderance of the evidence. Grossman appealed his sentence, arguing that Minn. Stat. § 609.108, as applied to him, violates *Apprendi*. The court of appeals accepted Grossman's argument and remanded for imposition of a 30–year sentence. *State v. Grossman*, 622 N.W.2d 394, 399 (Minn. App.2001). We affirm.

On November 24, 1998, R.C. met a number of her coworkers for happy hour at Al Baker's, a restaurant and bar in Eagan, Minnesota. At some point during the evening, R.C. and one of her coworkers left Al Baker's and went to Moose Country, a restaurant in Lilydale, Minnesota, to attend a birthday party. R.C., feeling that she was too intoxicated to drive, left her car at Al Baker's and rode to Moose Country with her coworker.

The bouncers at Moose Country eventually asked R.C. to leave because they perceived that she was highly intoxicated. R.C. and her coworker left at that time. R.C. wanted to wait outside because she wished to speak with a man who was still inside. After trying for 30–45 minutes to persuade R.C. to ride home with him, her coworker drove home without her.

Meanwhile, Grossman was at Moose Country for a separate birthday celebration. R.C. did not know Grossman or anyone in his party. When Grossman left Moose Country, he saw one or two of his friends talking with R.C. outside. R.C. told them that she was stranded and in need of a ride home. Grossman agreed to give R.C. and a woman in his party a ride home.

Grossman first dropped the other woman off at her apartment in Saint Paul, Minnesota, and then continued on toward Al Baker's, where R.C. planned to pick up her car. When they got close to Al Baker's, R.C. realized that she was still too intoxicated to drive. She requested that Grossman take her to her friends' townhouse nearby. Grossman drove around the area in search of the townhouse and parked his car when R.C. spotted a friend's parked vehicle.

R.C. testified that the next thing she remembered was opening her eyes to find Grossman on top of her, raping her.[1] She was lying on her back in a field, naked from the waist down. R.C. tried to scream, at which point Grossman stopped raping her and put his hands over her mouth. She fought back; biting, punching, kicking, and scratching Grossman.

---

1. Grossman's testimony at trial filled in the gap in R.C.'s memory. Grossman stated that he struck R.C. in the face soon after they got out of his car, knocking her unconscious.

He responded by punching her repeatedly in the face, chest, and stomach. Grossman then placed his hands around R.C.'s neck and began to strangle her. R.C. testified that she could not breathe and that Grossman only stopped choking her when she pretended to be dead. According to R.C., Grossman then raped her again and left her lying in the field.

R.C. remained in this position for 30 minutes, waiting to move until she was sure Grossman was gone. When she felt it was safe, R.C. got up and knocked on the doors of two houses in the area. The residents called 911 and the police arrived on the scene shortly thereafter.

Testimony of medical personnel established the extent of R.C.'s injuries, including multiple abrasions; scratches on her chest, abdomen, legs, and inner thighs; bruising to her face, forehead, ear, eyes, jaw, neck, chest, arms, legs, and inner thighs; a fractured left rib; a torn lingular frenelum (the tissue that attaches the tongue to the bottom of the mouth); bloodshot eyes and hemorrhaging around the eyes; irritation of the iris; and chipped teeth. In addition, there was testimony that red spots called "petechiae" observed on R.C.'s face and neck were consistent with her having been strangled.

In his testimony at trial, Grossman admitted that he severely beat R.C. and caused her injuries. He denied, however, that he raped R.C. and stated that he never intended to kill her.

The jury returned guilty verdicts on six counts: attempted second-degree murder in violation of Minn.Stat. § 609.19, subd. 1(1) (2000); first-degree assault (great bodily harm) in violation of Minn.Stat. § 609.221, subd. 1 (2000); third-degree assault (substantial bodily harm) in violation of Minn.Stat. § 609.223, subd. 1 (2000); first-degree criminal sexual conduct (fear of imminent great bodily harm) in violation

of Minn.Stat. § 609.342, subd. 1(c); first-degree criminal sexual conduct (force or coercion) in violation of Minn.Stat. § 609.342, subd. 1(e)(i); and first-degree criminal sexual conduct (mentally impaired, mentally incapacitated, or physically helpless) in violation of Minn.Stat. § 609.342, subd. 1(e)(ii).

At the sentencing hearing, the court entered convictions for attempted second-degree murder and first-degree criminal sexual conduct (fear of imminent great bodily harm) and then proceeded to sentence Grossman for first-degree criminal sexual conduct. The court began by noting that "violation of [Minn.Stat. § 609.342] carries with it a penalty of not more than 30 years in prison, a fine of $40,000.00 or both, unless you are determined by this court to be a patterned sex offender [under Minn. Stat. § 609.108], in which case the penalty is not more than 40 years in prison."

The sentencing court, based upon its review of a court-ordered psychological and psychosexual evaluation, found that Grossman qualified as a patterned sex offender. The sentencing court also made the following findings pursuant to Minn. Stat. § 609.108: that Grossman's crime was motivated by sexual impulses and was part of a predatory pattern of behavior that had criminal sexual conduct as its goal; that he is a significant danger to the public; that he needs long-term treatment or supervision beyond the presumptive term of imprisonment and supervised release; and that the record was "filled with aggravating circumstances." After making these findings, the court sentenced Grossman to 40 years' imprisonment under Minn.Stat. § 609.108, subd. 2.

Grossman appealed his sentence, claiming that the 40-year prison term violates due process. *Grossman*, 622 N.W.2d at 395. Specifically, he argued that Minn.

Stat. § 609.108, as applied to him, runs afoul of *Apprendi*, in which the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt," 530 U.S. at 490, 120 S.Ct. 2348. *Grossman*, 622 N.W.2d at 395.

The court of appeals agreed and "remanded [Grossman's sentence] for imposition of the statutory maximum sentence of 30 years under Minn.Stat. § 609.342, subd. 2 (1998)." *Grossman*, 622 N.W.2d at 399. The court of appeals determined that Minn.Stat. § 609.108, subd. 2, authorized the sentencing court to impose an enhanced sentence based on its findings concerning three factual issues. *Grossman*, 622 N.W.2d at 398. However, the court of appeals read *Apprendi* to require that all such findings be made by a jury based on proof beyond a reasonable doubt. *Grossman*, 622 N.W.2d at 399. We granted the state's petition for review and now affirm the decision of the court of appeals.

■■■ This court reviews the constitutionality of a statute de novo. *State v. Wolf*, 605 N.W.2d 381, 386 (Minn.2000); *State v. Chambers*, 589 N.W.2d 466, 479 (Minn.1999). Statutes are presumed constitutional. *Boutin v. LaFleur*, 591 N.W.2d 711, 714 (Minn.1999); *Chambers*, 589 N.W.2d at 479. A party challenging a statute on constitutional grounds must demonstrate, beyond a reasonable doubt, that the statute violates a provision of the constitution. *Wolf*, 605 N.W.2d at 386; *Boutin*, 591 N.W.2d at 714.

■■■ Grossman argues that Minn.Stat. § 609.108, as applied to him, violates the rule of due process announced by the Court in *Apprendi*. In *Apprendi*, the defendant was charged under New Jersey law with second-degree possession of a firearm for an unlawful purpose. 530 U.S.

at 469, 120 S.Ct. 2348. The charges stemmed from his firing several gunshots into the home of an African–American family that had recently moved into a previously all-white neighborhood. *Id.* A New Jersey statute set the range of penalties for a second-degree offense at 5 to 10 years. *Id.* at 470, 120 S.Ct. 2348. A separate hate crime statute established an enhanced sentencing range of 10 to 20 years if the trial court found, by a preponderance of the evidence, that the defendant's offense was committed with a purpose to intimidate an individual or group of individuals because of, inter alia, race. *Id.* at 468–69, 120 S.Ct. 2348.

Apprendi pleaded guilty to the second-degree possession charge. *Id.* at 469, 120 S.Ct. 2348. The sentencing court then held an evidentiary hearing, concluded by a preponderance of the evidence that Apprendi's crime "was motivated by racial bias," and sentenced him under the hate crime statute to an enhanced term of 12 years. *Id.* at 470–71, 120 S.Ct. 2348. Apprendi appealed, arguing "that the Due Process Clause of the United States Constitution requires that the finding of bias upon which his hate crime sentence was based must be proved to a jury beyond a reasonable doubt." *Id.* at 471, 120 S.Ct. 2348. The New Jersey appellate court upheld the enhanced sentence and the state supreme court affirmed. *Id.* at 471–72, 120 S.Ct. 2348.

The United States Supreme Court reversed and remanded, holding that the procedure employed by the sentencing court violated Apprendi's constitutional rights under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, as applied to the states by the Fourteenth Amendment. *Id.* at 476, 120 S.Ct. 2348 (citing *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143

L.Ed.2d 311 (1999)). The Court articulated the following constitutional rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.

■ Although Grossman was convicted and sentenced prior to the Court's decision in *Apprendi,* its holding must be applied on this direct appeal. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (holding that new rules for the conduct of criminal prosecutions must be applied retroactively to all criminal cases pending on direct review).

Grossman was convicted of and sentenced for first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(c). Minnesota Statutes § 609.342, subd. 2, provides that an individual convicted of this offense "may be sentenced to imprisonment for not more than 30 years." Thus, the jury's guilty verdict exposed Grossman to, at most, a 30–year prison term. Grossman was sentenced to 40 years of imprisonment, a term that exceeded the prescribed statutory maximum for his offense by 10 years.

The sentencing court imposed Grossman's enhanced sentence pursuant to Minn.Stat. § 609.108. Subdivision 1(a) of section 609.108 requires a court to impose a sentence of not less than double the presumptive sentence and not more than the statutory maximum sentence when each of the following three conditions is satisfied: First, the court must be imposing a sentence for a conviction of any of four enumerated offenses, including first-degree criminal sexual conduct, or for a conviction of any other predatory crime "if it reasonably appears to the court that the crime was motivated by the offender's sexual impulses or was part of a predatory

pattern of behavior that had criminal sexual conduct as its goal." Minn.Stat. § 609.108, subd. 1(a)(1) (2000). Second, the court must find "that the offender is a danger to public safety." *Id.* subd. 1(a)(2). Third, the court must also find "that the offender needs long-term treatment or supervision beyond the presumptive term of imprisonment and supervised release." This finding "must be based on a professional assessment by an examiner experienced in evaluating sex offenders that concludes that the offender is a patterned sex offender." *Id.* subd. 1(a)(3). As interpreted by this court in *State v. Christie,* 506 N.W.2d 293 (Minn.1993), the findings required by subdivision 1 must be based on a preponderance of the evidence. *Id.* at 299.

Section 609.108, subdivision 2, permits a court to impose a sentence of up to 40 years, "notwithstanding the statutory maximum imprisonment penalty otherwise provided for the offense." A defendant can be sentenced to an increased penalty under subdivision 2 only if "the factfinder determines, at the time of the trial or the guilty plea, that a predatory offense was motivated by, committed in the course of, or committed in furtherance of sexual contact or penetration, as defined in section 609.341, and the court is imposing a sentence under subdivision 1." *Id.*

According to the state, the court's findings under section 609.108, subdivision 1, by themselves, do not authorize imposition of a penalty exceeding 30 years, the prescribed statutory maximum for first-degree criminal sexual conduct. That much is true; a sentence under section 609.108, subdivision 1(a), is limited by the statutory maximum for the substantive offense. From here, the state's argument proceeds to the proposition that the only finding that subjected Grossman to an enhanced sentence was a determination by "the factfinder"—in this case, the jury—that his

offense "was motivated by, committed in the course of, or committed in furtherance of sexual contact or penetration." *Id.* subd. 2. The state urges this court to isolate the "sexual penetration" requirement in determining whether Grossman's sentence is constitutional in light of *Apprendi.*

Because "sexual penetration with another person" is an element of first-degree criminal sexual conduct, the jury's guilty verdict on this count necessarily included a finding beyond a reasonable doubt that Grossman had engaged in sexual penetration. *See* Minn.Stat. § 609.342, subd. 1. Yet the jury's finding of sexual penetration did not, by itself, expose Grossman to an increased sentence. Section 609.108, subdivision 2, contains the additional mandate that "the court is imposing a sentence under subdivision 1." As demonstrated above, subdivision 1 requires the sentencing court to make a series of findings by a preponderance of the evidence.

In essence, the sentencing court's authority to act under subdivision 2 was subject to two conditions precedent: (1) the jury had to find sexual contact or penetration; and (2) the court had to make the findings required by subdivision 1. Both the finding of the jury and those of the court were necessary, but neither was sufficient. To separate the two conditions would be to disregard the text of subdivision 2, which places the conjunctive "and" between them. Interpreting the statute in

a manner that ignores its plain and unambiguous language would violate well-established rules of statutory construction. *See Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn.2001); *Kersten v. Minnesota Mut. Life Ins. Co.,* 608 N.W.2d 869, 874–75 (Minn.2000) ("When the language of the statute is plain and unambiguous, it manifests the legislative intent and we must give the statute its plain meaning.").

The state also argues that the present case can be distinguished from *Apprendi* on the grounds that, unlike the factor at issue in *Apprendi,* the factors contained in Minn.Stat. § 609.108, subd. 1, are sentencing factors that relate to the defendant rather than the offense and have been traditionally determined by the sentencing court.

New Jersey made a similar argument in *Apprendi,* claiming that "[t]he required finding of biased purpose is not an 'element' of a distinct hate crime offense, but rather the traditional 'sentencing factor' of motive." 530 U.S. at 492, 120 S.Ct. 2348. The Court characterized New Jersey's line of reasoning on this point as "nothing more than a disagreement with the rule we apply today," *id.* at 492, 120 S.Ct. 2348, and described the distinction between "elements" and "sentencing factors" as "constitutionally novel and elusive," *id.* at 494, 120 S.Ct. 2348.[2] As the Court made clear, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punish-

---

**2.** The Court stated that its analysis on this point "is not [meant] to suggest that the term 'sentencing factor' is devoid of meaning." *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348. The Court explained as follows:

The term ["sentencing factor"] appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular

offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.

*Id.*

ment than that authorized by the jury's guilty verdict?" *Id.*

Under *Apprendi,* then, the fact that the findings listed in Minn.Stat. § 609.108, subd. 1, are of a kind traditionally left to the sentencing court rather than the jury is simply not relevant to the constitutional issue at hand. The effect of the sentencing court's findings, when coupled with the jury's finding of sexual penetration, was to increase by 10 years the prison sentence to which Grossman was exposed. Due process requires that each of these findings be made by a jury based on proof beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Thus, Minn.Stat. § 609.108, subd. 2, as applied to Grossman, is unconstitutional.[3]

In *Apprendi,* the Court quoted Justice Holmes's observation that " '[t]he law threatens certain pains if you do certain things, intending thereby to give you a new motive for not doing them.' " *Apprendi,* 530 U.S. at 476, 120 S.Ct. 2348 (quoting Oliver Wendell Holmes, *The Common Law* 40 (M. Howe ed. 1963)). In this case, it is clear that Minnesota threatened Grossman with certain pains—specifically, up to 30 years in prison—if he committed first-degree criminal sexual conduct. Minnesota threatened him with additional pains—specifically, up to an additional 10 years in prison—if the conditions of Minn. Stat. § 609.108, subd. 2, were satisfied. "As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect [Grossman] from unwarranted pains should apply equally" to all of the facts Minnesota has singled out for enhanced punishment. *Apprendi,* 530 U.S. at 476, 120 S.Ct. 2348.

Affirmed and remanded for imposition of the statutory maximum sentence of 30 years under Minn.Stat. § 609.342, subd. 2.

---

**3.** While Grossman has not made a facial challenge to Minn.Stat. § 609.108, subd. 2, we feel compelled to note our doubts as to whether there are any circumstances under which subdivision 2 could be constitutionally applied.