**ARNESON DISTRIBUTING CO., INC., a Minnesota corporation; Bartoletti Beverage Company, a Minnesota corporation; Bergseth Brothers Co., Inc., a North Dakota corporation; Chisago Lakes Distributing Co., Inc., a Minnesota corporation; · Dahlheimer Dist. Co., Inc., a Minnesota corporation; Day Distributing Co., a Minnesota corporation; Dick Distributing Co., Inc., a Minnesota corporation; Draper Beverage, Inc., a Minnesota corporation; Fruth Beverage Co., Inc., a**

Minnesota corporation; Hohensteins, Inc., a Minnesota corporation; Lake Beverage Co., a Minnesota corporation; Mahnich Distributing Co., Inc., a Minnesota corporation; Mark VII Distributors, Inc., a Minnesota corporation; Michaud Distributing, Inc., a Minnesota corporation; Rainy Lake Beverage Co., Inc., a Minnesota corporation; Skaar Distributing Co., Inc., a Minnesota corporation; and Tri–County Beverage, Inc., a Minnesota corporation, Plaintiffs—Counter Defendants,

v.

MILLER BREWING COMPANY, a Wisconsin corporation, Defendant—Counter Claimant.

No. 99–CV–1928.

United States District Court, D. Minnesota.

July 25, 2000.

Michael D. Madigan, Dunkley, Bennett, Christensen & Madigan, Minneapolis, MN, for Plaintiffs—Counter Defendants.

Peter W. Carter, Dorsey & Whitney, Minneapolis, MN, Michael W. Youtt, King & Spalding, Houston, TX, for Defendant—Counter Claimant.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

This lawsuit arises under the Beer Brewers and Wholesalers Act, Minn.Stat. § 325B.01, *et seq.* The Plaintiffs, as wholesale distributors, seek to prevent Defendant Miller Brewing Company ("Miller") from terminating the Plaintiffs' distribution agreements, in addition to other

causes of action. Miller, as Counter Claimant, seeks a declaratory judgment allowing Miller to terminate the Plaintiffs' distribution agreements.

The matter is currently before the Court on the parties' cross-motions for summary judgment. Because Miller does not have "good cause" to cancel or terminate the Plaintiffs' distribution agreements under the Beer Brewers and Wholesalers Act, the Plaintiffs' motion is granted while the Defendant's motion is denied.

## Background

Defendant Miller is a brewer of beer and other malt beverages. In April of 1999, Miller acquired several brands of malt beverages and soda (the "Acquired Brands") from the Stroh Brewery Company ("Stroh") and Pabst Brewing Company ("Pabst").

The Plaintiffs are wholesale distributors. During the relevant time period, the Plaintiffs were distributors of some or all of the Acquired Brands pursuant to distribution agreements with Stroh and/or Pabst. The Plaintiffs have spent significant resources in purchasing and developing a market for these brands.

The various written agreements with Stroh and Pabst contained certain language regarding uniform termination or modification of the agreements. The Pabst agreement, for example, contained the following language:

**Uniform Termination of Distributor Agreements.** Pabst shall also have the right to terminate this Agreement under the following circumstances: (A) Pabst contemporaneously terminates all other agreements substantially similar in nature to the form of this Agreement which Pabst has with all its other United States distributors; and (B) Pabst gives at least ninety (90) days written notice of such termination. If, subsequent to the sending of said ninety (90) day notice of termination pursuant to this subparagraph, Pabst enters into a new distributor contract with any of its other distributors in the United States, Distributor shall have the right to enter into a new contract of substantially the same form and substance.

(Pabst Agreement at ¶ 9.)

The Stroh agreement contained a similar provision:

Notwithstanding any other provision of this Agreement, and in addition to any other rights of termination provided in this Agreement, Stroh shall have the right, upon 90 days written notice to Wholesaler, to terminate this Agreement provided that Stroh similarly terminates its agreements with all wholesalers located in the state in which Wholesaler is located and with which Stroh has entered into Wholesaler Agreements in form substantially similar to this Agreement. If within 2 years of such a termination, Stroh offers to all or substantially all of its terminated wholesalers the right to enter into a new wholesaler agreement with Stroh, then Stroh shall offer Wholesaler the right to enter into a new agreement on substantially the same terms being offered other wholesalers.

(Stroh Agreement at § 13.)

After Miller purchased the Acquired Brands, Miller sent to the Plaintiffs a new Miller Distributor Agreement with a letter indicating that the Plaintiffs were to sign the Distributor Agreements within ten days or be terminated. The Plaintiffs found certain of the provisions in the Miller Distributor Agreement objectionable and declined to sign.

Several months later, after additional correspondence between the parties, Miller corresponded with the Plaintiffs by a letter dated August 19, 1999. Miller advised the Plaintiffs that if they did not sign the Miller Distributor Agreement by December 1, 1999, their distributor rights would be terminated.

This litigation followed.

## Discussion

### A. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank*, 92 F.3d at 747. However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed.R.Civ.P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must then demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957.

### B. The Beer Brewers and Wholesalers Act

The Beer Brewers and Wholesalers Act provides, in relevant part, as follows:

Notwithstanding the terms, provisions or conditions of any agreement, no brewer shall amend, cancel, terminate or refuse to continue to renew any agreement, or cause a wholesaler to resign from an agreement, unless the brewer:

(1) has satisfied the notice and opportunity to cure requirements of section 325B.05;

(2) has acted in good faith; and

(3) has good cause for the cancellation, termination, nonrenewal, discontinuance, or forced resignation.

(a) "Good cause" includes, but is not limited to, the following:

(1) revocation of the wholesaler's license under section 340A.304;

(2) the wholesaler's bankruptcy or insolvency;

(3) assignment of the assets of the wholesaler for the benefit of creditors, or a similar disposition of the wholesaler's assets; or

(4) a failure by the wholesaler to substantially comply, without reasonable excuse or justification, with any reasonable and material requirement imposed on the wholesaler by the brewer, where the failure was discovered by the brewer not more than one year before the date on which the brewer gave notice to the wholesaler under section 325B.05.

(b) "Good cause" does not include the sale or purchase of a brewer.

Minn.Stat. § 325B.04.

**Obligations of successor**

A successor shall become obligated to all of the terms and conditions of the agreement in effect on the date of succession. This section applies regardless of the character or form of the succession. A successor has the right to contractually require its wholesalers to comply with operational standards of performance, if the standards are uniformly established for all of the successor's wholesalers and conform to sections 325B.01 to 325B.17.

Minn.Stat. § 325B.14.

■ Miller asserts that the Plaintiffs' existing agreements permit Miller to amend or terminate the agreements, so

long as the amendment or termination is made uniformly, pursuant to the provisions of the Stroh and Pabst agreements cited previously. However, Minn.Stat. § 325B.04, subd. 1(3) provides that, notwithstanding any provision or agreement to the contrary, no brewer may cancel or terminate a distributor agreement without good cause. Therefore, Miller may not require the Plaintiffs to sign the Miller Distributor Agreement, nor terminate the Plaintiffs' existing distributor agreements without "good cause," as provided by the statute.

Miller asserts that it has "good cause" to cancel or terminate the Plaintiffs' existing distributor agreements and require the Plaintiffs to sign the Miller Distributor Agreements because Miller has a legitimate business interest in seeking uniform distributor agreements among its distributors. The Plaintiffs, however, contend that the new Miller Distributor Agreement is actually less favorable to the distributors than their existing agreements. The Plaintiffs further allege that Miller's purported desire for uniformity is a sham and that Miller actually seeks to consolidate its wholesale distribution into Miller distributorships; the Plaintiffs point to the fact that Miller has a different distributor agreement with those Acquired Brands distributors who also distribute Miller's flagship brands. Finally, Miller has never alleged that the Plaintiffs' performance is substandard or deficient in any way.

■ Minnesota courts have not interpreted the "good cause" provision as the language is used in the Beer Brewers and Wholesalers Act. The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16. *Kersten v. Minnesota Mutual Life Ins. Co.*, 608 N.W.2d 869, 874 (Minn.2000). When the language of the statute is plain and unambiguous, it manifests the legislative intent and the court must give the statute its plain meaning. *Kersten*, 608 N.W.2d at 874–75. When a statute is ambiguous, the legislative intent may then be determined by examining other factors including the need for the law, the circumstances of its enactment, the purpose of the statute, and the consequences of a certain interpretation. *Kersten*, 608 N.W.2d at 875.

In regards to the Beer Brewers and Wholesalers Act, only guiding examples are given as to the meaning of "good cause"; the term itself is not defined. The statute is therefore ambiguous, and its remedial purpose should be considered in interpreting the term at issue.

The courts of the District of Minnesota have previously addressed the purpose of the Beer Brewers and Wholesalers Act and have found the statute to have a legitimate public purpose. In *Crowley Beverage Company, Inc. v. Miller Brewing Company*, Judge Murphy rejected the defendant's argument that the statute was "narrow special interest legislation" that was "enacted to promote the private interests of state beer distributors rather than to serve the public at large." (Memorandum Opinion and Order at p. 4) (D.Minn. 1987) (J. Murphy), *aff'd*, 862 F.2d 688, 691 (8th Cir.1988). Rather, the court noted that, among its provisions, the statute prohibited brewers from fixing wholesale prices, coercing wholesalers to accept delivery of unordered products, or discriminating among wholesalers. *Id.* at p. 5. Judge Murphy concluded that such legitimate purposes were reasonably inferred from the statute and met the due process rationality standard. *Id.* at p. 5.

Judge Magnuson reached a similar conclusion in *Rex Distributing Co., Inc. v. Miller Brewing Co., Inc.*, in which the court noted that it was "not persuaded that the purpose of the Act is merely to protect beer wholesalers." (Memorandum, Opinion and Order at pp. 13–14) (D.Minn. 1995) (J. Magnuson). Instead, the court noted that "[a]lthough the Act itself does not contain a statement of purpose, the chief purpose of dual distribution prohibitions like this one is to prevent brewers from coercing beer wholesalers into violat-

ing the liquor regulatory laws by threatening to deprive them of their distribution rights." *Id.* at p. 14.

Remedial legislation should be given a liberal construction to effectuate its statutory purpose. *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 782 (8th Cir.1991). Therefore, "good cause" should be construed so as to give effect to the purposes of the Beer Brewers and Wholesalers Act. Miller argues that, because the definition of good cause contains the phrase "includes, but is not limited to," good cause should be interpreted as including a brewer's legitimate business reason. However, although the definition of good cause explicitly refrains from attempting to delineate every specific instance that may lead to cancellation or termination, the specified examples of good cause all fall within the category of wholesaler performance or deficiency. A brewer's legitimate business reason is not consistent with the examples of "good cause" given by the statute. If the legislature had intended to include not just the wholesaler's performance, but the brewer's situation as well, the legislature could have included an example or category that did so. Instead, the legislature set forth only examples pertaining to the wholesaler's actions, and further explicitly provided that "the sale or purchase of a brewer" does not constitute good cause. Minn.Stat. § 325B.04, subd. 2(b).

Indeed, the Defendant's suggested construction would render the "good cause" requirement essentially meaningless and thus would not be consistent with the remedial purposes of the statute. Finally, the successive provision, Minn.Stat. § 325.05 provides that a wholesaler must be given a "bona fide opportunity to substantially cure any claimed deficiency," a provision that would be rendered meaningless if the purported "good cause" for the cancellation or termination were outside the wholesaler's control, such as a brewer's legitimate business reason.

## Conclusion

In accordance with the analysis above, the Court finds that Miller's purported business reason for requiring the Plaintiffs' to sign the Miller Distributor Agreement in place of the Plaintiffs' existing agreements does not satisfy the "good cause" requirement of the Beer Brewers and Wholesalers Act. Therefore, because Miller has not established "good cause" for seeking the cancellation of the existing distributor agreements, Miller may not terminate the Plaintiffs' distributor rights in retaliation for their refusal to sign the Miller Distributor Agreement.

As to the Plaintiffs' remaining causes of action, which were not the subject of the present motions, it is the position of the Court that it is in the best interests of the parties to pursue a settlement at this time, in the context of the Court's decision.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. The Defendant's Motion for Partial Summary Judgment (Doc. No. 28) is **DENIED.**

2. The Plaintiffs' Motion for Summary Judgment (Doc No. 19) is **GRANTED.**

3. The Counterclaim by Defendant Miller Brewing Company against the Plaintiffs is **DISMISSED WITH PREJUDICE.**

4. Pursuant to the Beer Brewers and Wholesalers Act, Minn.Stat. § 325B.01, *et seq.,* Miller may not terminate the Plaintiffs' distribution rights for the Plaintiffs' refusal to sign the Miller Distribution Agreement.